382 So.2d 697 (1980)
STATE of Florida, Petitioner,
v.
Robert Alan BENDER, Respondent.
STATE of Florida, Petitioner,
v.
Leonard G. FERRO, Respondent.
STATE of Florida, Petitioner,
v.
Pete M. JAMES, Respondent.
STATE of Florida, Petitioner,
v.
Michael R. POTTS, Respondent.
Nos. 57069, 57071, 57072 and 57073.
Supreme Court of Florida.
April 3, 1980.
*698 Jim Smith, Atty. Gen. and Charles Corces, Jr., Asst. Atty. Gen., Tampa, for petitioner.
Joel P. Yanchuck, of Yanchuck & Thompson, St. Petersburg, for Robert Alan Bender and Michael R. Potts.
Paul Castagliola, St. Petersburg, for Leonard G. Ferro.
Robert E. Jagger, Public Defender and Stephanie L. Willis, Asst. Public Defender, St. Petersburg, for Pete M. James.
OVERTON, Justice.
These consolidated cases are before the Court upon petitions for writs of certiorari to review pretrial orders declaring unconstitutional sections 322.261 and 322.262, Florida Statutes (1977).
The contested statutory provisions direct the Department of Highway Safety and Motor Vehicles and the Department of Health and Rehabilitative Services to establish and approve appropriate testing methods for determining alcoholic content in the blood. We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
In the instant case, each of the respondents was issued traffic citations for driving under the influence of alcoholic beverages and for unlawful blood alcohol in violation of section 316.193, Florida Statutes (1977). The validity of this section is not in issue in these proceedings.
Upon motions of the respondents, the trial court held the requirements in sections 322.261 and 322.262 that executive agencies approve blood alcohol testing methods required suppression of the test results "on the grounds that the delegation of authority by the Florida Legislature to HRS and DHSMV is unconstitutional in that said delegation lacks proper guidelines and standards." The order further stated: "The State can still prosecute a person accused of driving a motor vehicle while under the influence of an alcoholic beverage by presenting evidence of the person's physical characteristics and driving habits which led to the issuance of a citation for said offense." This holding appears to find that because the statute is unconstitutional, there can be no use of any breathalyzer or blood test to determine alcoholic content.
Further, although the trial court declared moot respondents' motions to suppress breathalyzer for failure to properly incorporate manufacturers' operating manuals by reference in the rules, it still proceeded to note "that the defendants' constitutional rights of due process and equal protection were violated by the failure of HRS and DHSMV to properly incorporate the procedures and methods of the manufacturers for the maintenance and operation of the breathalyzers."
We find each of these holdings by the trial court to be erroneous. We further find sections 322.261 and 322.262, Florida Statutes, to be constitutional and quash the orders of the trial court.
There is no constitutional impediment to a blood alcohol analysis with or without consent where probable cause has been established. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Breithaupt v. Abram, 352 U.S. 432, *699 77 S.Ct. 408, 1 L.Ed.2d 448 (1957). Further, there is a compelling state interest in highway safety that justifies the state legislature to allow suspension of a driver's license for failure to take a breathalyzer or blood alcohol test. See Mackey v. Montrym, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979).
Prior to the adoption of sections 322.261 and 322.262, scientific tests of intoxication were admissible in evidence without any statutory authority if a proper predicate established that (1) the test was reliable, (2) the test was performed by a qualified operator with the proper equipment and (3) expert testimony was presented concerning the meaning of the test.
Chapter 322, Florida Statutes (1977), contains the statutory implied consent of every motor vehicle driver to take an approved chemical test to determine alcoholic content in the blood, with refusal resulting in license suspension. This chapter generally concerns the licensing of persons who drive on the public highways and the suspension of this license privilege for those who demonstrate their disregard for the safety of others. The overall purpose of this chapter is to address the problem of drunk drivers on our public roadways and to assist in implementing section 316.193 which provides that driving while intoxicated is unlawful.
The purpose of those portions of sections 322.261 and 322.262 which direct law enforcement to use only approved techniques and methods is to ensure reliable scientific evidence for use in future court proceedings and to protect the health of those persons being tested, who by this statute have given their implied consent to these tests.
In recognition of the multiple types of testing equipment and procedures now available for these purposes, the legislature, by these sections, directed the Department of Highway Safety and Motor Vehicles and the Department of Health and Rehabilitative Services to approve the specific techniques and methods which law enforcement may use in conducting a chemical analysis of a person's breath or blood. Numerous state jurisdictions have enacted similar statutes mandating the use of certain approved tests. See, e.g., Ala. Code, 32-5-193(b) (1977); Ariz.Rev.Stat. § 28-692(D) (1979); Conn. Gen. Stat. 14-227a(d) (1979); Me.Rev. Stat. tit. 29, § 1312.6 (1979); Mo. Ann. Stat. § 577.020(2) (1978). See also Uniform Vehicle Code § 11-902.1 (1979).
Other jurisdictions which have enacted similar statutory provisions for approved testing methods have held that noncompliance makes any test result inadmissible. See Lankford v. Redwing Carriers, Inc., 344 So.2d 515 (Ala. Civ. App. 1977); State v. Bruins, 315 So.2d 293 (La. 1975); State v. Miracle, 33 Ohio App.2d 289, 294 N.E.2d 903 (1973); State v. Wallin, 195 N.W.2d 95 (Iowa 1972); State v. Sinclair, 474 S.W.2d 865 (Mo. App. 1971); State v. Gallant, 108 N.H. 72, 227 A.2d 597 (1967).
It must be recognized that the implied consent provision of chapter 322 and the approved testing methods and presumptions contained therein are all interrelated.
When the prosecution presents testimony in evidence concerning motor vehicle driver intoxication which includes an approved alcohol test method by a properly licensed operator, the fact finder may presume that the test procedure is reliable, the operator is qualified, and the presumptive meaning of the test as set forth in section 322.262(2) is applicable. The test results are admissible into evidence only upon compliance with the statutory provisions and the administrative rules enacted by its authority. Gillman v. State, 373 So.2d 935 (Fla. 2d DCA 1979); State v. Wills, 359 So.2d 566 (Fla. 2d DCA, 1978). The presumptions are rebuttable, and a defendant may in any proceeding attack the reliability of the testing procedures, the qualifications of the operator, and the standards establishing the zones of intoxicant levels. In addition, other competent evidence may be presented to rebut the presumptions concerning whether the person was under the influence of alcoholic beverages to the extent that his or her normal faculties were impaired.
*700 We note that where motor vehicle driver intoxication is not involved, the implied consent provision is inapplicable, and, consequently, the results of blood alcohol tests are admissible into evidence without compliance with the administrative rules if the traditional predicate is laid which establishes the reliability of the test, the qualifications of the operator, and the meaning of the test results by expert testimony. None of the statutory presumptions can apply in the absence of compliance with the administrative rules.
We expressly reject the holding of the trial court that these statutory sections constitute an unlawful delegation of legislative power to the named executive agencies. Although any delegation of legislative authority is open to judicial review, the practicalities of the subject matter sought to be controlled must be considered. There are numerous scientific tests for determining alcoholic intoxication. Blood alcohol analysis has multiple methods that fall within three basic categories: (1) diffusion, (2) aeration, and (3) distillation. Under the category of distillation alone, there are multiple methods, including: (a) Kozelka and Hine method; (b) LaMotte-Heise method; (c) Dubowski method; (d) Harger method; and (e) Friedeman and Brook method. An enzymatic procedure has been developed which eliminates the need for distillation, and there is also a gas liquid chromatography analysis for blood. In addition, tests for blood alcohol can be made from urine and saliva chemical analysis. For breath analysis, multiple means are available including the original intoximeter, the drunkometer, the alcometer, the breathalyzer, the mobat sober meter, the gas chromatography breath-testing equipment, and the intoxilyzer.
We believe the statutory authority empowering these agencies to approve testing methods for the implementation of breath-and blood-testing apparatus is proper and allowable. The legislature did not delegate to an executive agency a "law-making power," which we found improper in Askew v. Cross Key Waterways, 372 So.2d 913 (Fla. 1978). The authority to test for blood alcohol existed without this statute. The legislature merely assigned to the agencies the responsibility to establish proper uniform testing procedures for the protection of the public who must submit to the test or lose their driving privilege. There is a clear distinction between delegating to an executive agency law-making functions and assigning an executive agency supervisory responsibility over a police power function that already exists. To require legislative supervision of the administration of these scientific testing methods would require constant legislative hearings to develop the necessary expertise, which is neither practically possible nor required by our constitution. See State, Department of Citrus v. Griffin, 239 So.2d 577 (Fla. 1970). We find the legislature properly exercised its authority in assigning to these agencies the responsibility of establishing uniform and reliable testing methods in this scientific area, particularly under the circumstances where the tests are part of a statutory scheme which prescribes the implied consent of all drivers to take these tests and where the tests and procedures are always subject to judicial scrutiny.
We further reject the trial court's holding that the respondents' constitutional rights of due process and equal protection were violated by the failure of the Department of Health and Rehabilitative Services and the Department of Highway Safety and Motor Vehicles to incorporate the manufacturers' procedures for maintenance and operation as part of the promulgated rules. We note that the rules under attack require the preventive maintenance operation and preventive maintenance check to be in accordance with the procedures set forth by the manufacturer. What is attacked is the failure to attach and file those procedures with the Secretary of State. This does not constitute a due process or equal protection violation. There is no showing that these manufacturers' operating manuals are unavailable, and the respondents clearly have the right in their individual proceedings to attack the reliability of the testing procedures or the operator's qualifications.
*701 For the reasons expressed in this opinion, we uphold the constitutionality of sections 322.261 and 322.262, Florida Statutes (1977), quash the orders of the trial court, and remand these causes for trial.
It is so ordered.
ENGLAND, C.J., and ADKINS, BOYD, SUNDBERG, ALDERMAN and McDONALD, JJ., concur.