## CITY OF SOUTH DAYTONA v MALTBY
### Case No. 68926-RP
County Court, Volusia County

October 29, 1989

**APPEARANCES OF COUNSEL**

**Frederick S. Jaeger, Esquire,** for plaintiff.

**Flem K. Whited, III., Esquire,** for defendant.

### OPINION OF THE COURT

SHAWN L. BRIESE, County Judge.

THIS CAUSE came to be heard on March 14, 1990 pursuant to an evidentiary hearing on defendant's Motion to Suppress. Argument by counsel was heard on March 19, 1990. This Court, upon consideration of testimony elicited, stipulated testimony, argument, submitted case authority, and further research, finds as follows:

Defendant moved to suppress blood test results based on the alleged

failure of the Department of Health and Rehabilitative Services (HRS) to promulgate an approved method of test administration which shall be followed in all such tests pursuant to § 316.1932(1)(f)1, Fla. Stat. (1989). Defendant also moved to suppress her blood test result due to the alleged failure of HRS to promulgate sufficient rules or regulations to assure scientific accuracy of the test result. Lastly defendant alleges an equal protection violation based on the existence of detailed regulations dealing with breath tests while similar regulations are lacking for blood tests.

The parties stipulated to the use of Dr. Howard R. Rarick's, Scientific Director of the Florida Implied Consent Program, HRS, testimony given at an unrelated hearing before another judge on October 17, 1989. Dr. Rarick testified that the alcohol dehydrogenase and gas chromatography chemical tests (as defined in HRS Rule 10D-42.0211(6)) are approved for facility of administration and reliability of results (Transcript of October 17, 1989 hearing, hereafter "T" 5-6, 7). (For reference see § 316.1932(1)(f)1, Fla. Stat. (1989) and HRS Rule 10D-42.028). Note that Dr. Rarick subsequently interchanged alcohol dehydrogenase and gas chromatography [chemical] tests with methods (see definition in HRS Rule 10D-42.0211(9)) (T 11, 26, 27-28). Dr. Rarick testified that the Florida Statutes authorize HRS to approve procedures without guidelines as to detail (T 8). Breath test procedures have great detail due to the fact that police officers are conducting the tests while blood test procedures are less detailed due to testing by chemists (T 8-9).

Dr. Rarick maintains that the blood alcohol testing permit process (see HRS Rule 10D-42.030(1)(d)) requiring the submission of the "complete description of procedures used in determining blood alcohol analysis" satisfied the statutory requirements of § 316.1932(1)(f)1 Fla. Stat. (1989). (See T 11-26). Dr. Rarick, noting for example that gas chromatographs can operate within parameters, testified that permit applicants submit their operating procedures/parameters such as temperature, internal standards, pressures, etc. (T 11-12, 13-14, 17, 19). When a permit is issued the permittee has been approving using his/her submitted procedures (T 24-25).

Dr. Richard Jensen, a declared expert in analytical chemistry, toxicology, and blood/breath testing, testified for the defense. Dr. Jensen testified that method is synonymous with procedures (Transcript of March 14, 1990 hearing, hereafter "R" 13-14, 16-17). Dr. Jensen maintained that established procedures are needed to insure accuracy and reliability (R 15, 21). It was acknowledged that HRS Rule 10D-42.030(1)(d) requires the submission of written procedures by the

**93**

permit applicant. (R 16, 18). Dr. Jensen assumed that the submitted procedures are sufficiently detailed to assure accuracy and reliability (R 18). Likewise, Dr. Rarick admitted the laboratories may be using the same criteria but there was no document indicating that was the case (R 30). There are no specific delineated rules or regulations that deal with procedures to follow when conducting chemical tests for blood (R 17-18). Dr. Rarick testified that there are also no rules; (1) requiring two blood tests (See HRS Rule 10D-42.0211(4) for the requirement of two analysis on a single blood sample), (2) indicating any permitted variance between two analyses producing different results, (3) requiring maintenance to check calibration, and (4) requiring record keeping (R 20-21, 24-25). There are maintenance criteria within the scientific community.

Dr. Jensen, on cross examination, admitted he knew nothing about the blood test in the instant case or what procedures were actually utilized. If a chemist testified as to the procedures used it could be determined if the results were scientifically valid (R 33-34).

Section 316.1932(1)(f)1 Fla. Stat. (1989) provides:

The tests determining the weight of alcohol in the defendant's blood shall be administered at the request of a law enforcement officer substantially in accordance with rules and regulations which shall have been adopted by the Department of Health and Rehabilitative Services. *Such rules and regulations* shall be adopted after public hearing, shall specify precisely the test or tests which are approved by the Department of Health and Rehabilitative Services for reliability of result and facility of administration, and *shall provide an approved method of administration which shall be followed in all such tests given under this section* . . . [Emphasis added].

HRS Rule 10D-42.0211(9) provides:

Methods—shall mean a set of instructions detailing the proper operation of an instrument or the procedures used to analyze for a specific compound.

The Court in *State v Jones,* 316 So.2d 100 (La. 1975) (involving a photo-electric intoximeter) interpreted a statute requiring chemical analyses of blood, urine, breath, or other bodily substance be performed according to methods approved by the State Department of Health. The Court citing R. Donigan, *Chemical Tests And The Law* (Northwestern University Traffic Institute 1968) notes that techniques to be employed in making chemical tests are different from "test methods" (types of chemical tests). The Court interpreted the statute to require much more than the mere designation of the name of a testing

94

device and vague reference to some procedure or technique, without setting forth the specifics of each procedure to technique.

The Court found, due to the heavy reliance placed on the results obtained from the tests, that the methods and techniques promulgated by the State Department of Health include painstaking, step-by-step operating instructions and provisions for inspections and maintenance of the testing devices at stated intervals which will reasonably assure, absent specific proof to the contrary, that the device was functioning properly at the time of the test administration.

The only Florida case to deal with the issue herein is *State v Galliano,* 37 Fla. Supp. 2d 214 (Dade County Ct. 1989). The Court found that HRS simply ignored a statutory directive that it must approve not only gas chromatography in general, but the methods by which the tests should be administered. The Court found no statutory rationale for drawing a distinction between blood and breath testing. Louisiana courts have also found regulations inadequate in that regulations meeting *blood* alcohol analysis did not include provisions for repair, maintenance, inspection, cleaning, certification, and chemical accuracy. See *State v Rowell,* 517 So.2d 799 (La. 1988); *State v Tanner,* 457 So.2d 1172 (La. 1984); *State v Honeyman,* 434 So.2d 698 (La. 2d Cir. Ct. of App. 1989); and *State v Fairbanks,* 532 So.2d 1145 (La. 4th Cir. Ct. of App. 1988).

The Florida Supreme Court in *State v Bender,* 382 So.2d 697 (Fla. 198) held that the fact finder may presume that the utilized test procedure is reliable, the operator is qualified, and the presumptions of impairment are applicable when the evidence of motor vehicle driver intoxication presented pursuant to the Florida Implied Consent Law includes (1) an approved alcohol test *method* (See HRS Rule 10D-42.0211(9) and (2) by a properly licensed operator. The Court in *State v Strong,* 504 So.2d 758 (Fla. 1987) did not change the *Bender* holding with regard to the above rationale. It merely shortened items 1 and 2 to an approved test by a certified technician.

It would be absurd to suggest that a blood test result is admissible, upon a showing pursuant to HRS Rules, that a gas chromatography or alcohol dehydrogenase chemical test was used by a person holding a valid permit. Even under the Implied Consent Law fundamental evidentiary concerns of relevancy require some showing of reliability of the scientific evidence. Hence, the statutory requirement of § 316.1932(1)(f)1, Fla. Stat. (1989) requiring rules and regulations providing for an approved method (procedures) of administration which shall be followed in all such tests.

This Court is of the opinion that pursuant to the above cited emphasized portion of § 316.1932(1)(f)1, Fla. Stat. (1989) that HRS has failed to provide a set of instructions detailing the proper operation of gas chromatographs or the procedure used to analyze for ethyl alcohol using the alcohol dehydrogenase method *in all such tests given.* Delegation of the methods used to individual permittees even if approved in the permit process indicates a lack of uniformity required by the statute.

The defense suggests that when motor vehicle driver intoxication is an element of the crime, compliance with the Florida Implied Consent Law is exclusive and mandatory. This Court does not view *Bender* or *Strong* to so hold. The cases hold that where the blood alcohol result is sought to be admitted pursuant to the Implied Consent Law compliance with the statutory provisions and the administrative rules are required. It is only where the Implied Consent Law is implicated, based on the facts in the case, that mandatory compliance is required. A blood alcohol test result is admissible into evidence without compliance with the administrative rule if the traditional predicate is laid. See *State v Bender, supra, State v Strong, supra,* the post *Strong* cases of *State v Walther,* 519 So.2d 731 (Fla. 1st DCA 1988); *State v Lendway,* 519 So.2d 725 (Fla. 2d DCA 1988); and *State v Quartararo,* 552 So.2d 42 (Fla. 2d DCA 1988), and the pre—*Strong*—case of *Pardo v State,* 419 So.2d 1313 (Fla. 5th DCA 1983). Section 90.402, Fla. Stat. (1989) as it relates to relevant scientific evidence has not been abrogated by section 316.1932(1)(f), Fla. Stat. (1989) and the HRS rules relating to blood testing.

Based on the above and foregoing, it is hereby;

ORDERED and ADJUDGED that Defendant's Motion to Suppress is granted as to the admissibility of Defendant's blood test results pursuant to § 316.1932(1)(f) Fla. Stat. 1989) and denied as to the admissibility of said test pursuant to traditional evidentiary methods.

This Court does certify the following questions to be of great public importance.

(1) Does § 316.1932(1)(f)1, Fla. Stat. (1989) require:

(A) HRS to promulgate rules specifying a set of instructions detailing the proper operation of gas chromatographs and the procedures used to analyze for ethyl alcohol using the alcohol dehydrogenase method *in all such tests given?*

(B) HRS to promulgate rules requiring periodic inspections and maintenance of *blood* testing devices or instruments?

(2) Is compliance with § 316.1932(1)(f), Fla. Stat. (1989) and the HRS rules relating to blood testing exclusive and mandatory when motor vehicle driver intoxication is an element of the crime charged?

DONE and ORDERED in Chambers at Daytona Beach, Volusia County, Florida, this 29th day of October, 1989. (Amended pursuant to Defendant's Motion for Rehearing heard on September 14, 1990). **Editor's Note:** The foregoing decision has been appealed to the Circuit Court of the Seventh Judicial Circuit in and for Volusia County, Florida, on January 7, 1991.