# STATE OF FLORIDA v HOFF (Consolidated)

## Case Nos. TO90-122826, etc.

County Court, Orange County

January 14, 1991

### APPEARANCES OF COUNSEL

**Office of the State Attorney,** for plaintiff, State of Florida.
**Charles W. Willits, Esquire** for defendant Hoff.
**Charles W. Willits, Esquire,** for defendant Gleeson.
**Charles N. Willits, Esquire,** for defendant Hammond.
**Warren W. Lindsey, Esquire,** for defendant Leland.
**Michael J. Snure, Esquire,** for defendant Kecker.
**Stuart I. Hyman, Esquire,** for defendant Reynolds.

**Bert W. Barclay, Esquire,** for defendant Savell.
**Paul N. Schaefer, Esquire,** for defendant Smythe.
**Joerg F. Jaeger,** for defendant Mulvaney.
**Joerg F. Jaeger, Esquire,** for defendant Craft
**Stephen A. Weinstein, Esquire,** for defendant Henderson.
**Stuart I. Hyman, Esquire,** for defendant Wicker.
**James E. Taylor, Jr., Esquire,** for defendant Jones.
**Stuart I. Hyman, Esquire,** for defendant Jagotka.

## OPINION OF THE COURT

STEPHAN W. CARTER, County Judge.

### ORDER ON DEFENDANTS' MOTIONS IN LIMINE TO EXCLUDE FROM EVIDENCE BREATH TEST RESULTS AND REFUSALS TO TAKE BREATH TESTS

The defendants were charged with driving under the influence of alcohol in violation of section 316.193, Florida Statutes. After their arrest they were offered a breath test on an Intoxilyzer 5000 Series machine in accordance with section 316.1932, Florida Statutes. Some of the defendants took the test and others refused. They move in limine to exclude the results of the test and refusals from evidence based on alleged infirmities in the state's breath testing procedures.

Historically, the results of scientific tests of intoxication have been admissible if a proper predicate was established showing that the test was reliable, the test was performed by a qualified operator with proper equipment, and expert testimony was presented to explain the meaning of the tests. *State v Bender,* 382 So.2d 697, 699 (Fla. 1980). By the adoption of section 316.1932 the legislature, in an effort to ensure reliable testing and to protect the health of those being tested, directed law enforcement to use only approved testing techniques and measures. *Id.* It directed the Department of Health and Rehabilitative Services (HRS) "to approve satisfactory techniques and methods." § 316.1932(b), Fla. Stat.

Section 316.1932(b) provides that in order for a breath test to be valid under that section it

> must have been performed substantially according to methods approved by the Department of Health and Rehabilitative Services. For this purpose, the department is authorized to approve satisfactory techniques or methods.

Section 316.1932(f)(1) provides:

142

The tests determining the weight of alcohol in the defendant's blood shall be administered at the request of a law enforcement officer substantially in accordance with the rules and regulations which shall have been adopted by the Department of Health and Rehabilitative Services. Such rules and regulations

shall be adopted *after public hearing,* shall specify precisely the test or tests which are approved by the Department of Health and Rehabilitative Services for reliability of result and facility of administration, and shall provide an approved method of administration which shall be followed in all such tests given under this section. (emphasis supplied).

The department has promulgated rules relating to the initial approval of types of testing instruments (prototype testing), registration and yearly accuracy checks of individual machines, monthly inspection and maintenance requirements, operational procedures, and qualifications of operators. Florida Administrative Code 10D-42 governs the registration and yearly accuracy check of individual machines and provides:

All chemical breath test instruments or devices used for breath testing under provisions of Chapter 316 and 327, Florida Statutes, shall be previously checked, approved for proper calibration and performance, and registered by authorized personnel of the department by trade name, model number, serial number and location, on forms provided by the department. All such chemical test instruments registered hereunder shall be checked at least once each calendar year (January 1 through December 31) for accuracy and reproducibility. With regard to the monthly checks, rule 10D-42.024(11)(d), which governs the monthly checks for the Intoxilyzer 5000 Series, provides:

Maintenance Procedures—Preventative maintenance shall be performed in accordance with procedures outlined in HRS form 1514, Sep 82, "Breath Alcohol Instrument Check List—Preventative Maintenance Procedures," which is incorporated by reference.

The courts have accepted the statute and the HRS rules as rules of evidence in the sense that compliance with the statutes have generally been accepted as a substitute for the evidentiary predicate historically required for introduction of breath test results. As stated in *Bender,* upon the presentation of evidence that a licensed (by HRS) operator administered an approved alcohol test method, the traditional predicate of a qualified operator, reliable test, and expert explanation of the meaning of the test is satisfied. *Bender,* 382 So.2d at 699. The

defendants claim, however, that the HRS rules fail to sufficiently ensure test reliability because the rules do not contain a specific procedure for yearly accuracy checks or standards of performance for either the yearly or monthly accuracy checks.

Preliminarily, the state argues that the defendants may not assert these arguments in this Court. It argues that the arguments are essentially challenges to the validity of the promulgated rules and, as such, should be attacked by administrative procedures under the Administrative Procedures Act (APA), section 120.50 *et. seq.,* Florida Statutes. While the state does not deny the jurisdiction of the Court to decide the questions presented, it argues that the Court should, as a matter of sound judicial policy, defer to the administrative process.

First, this Court is not evaluating the validity of the formally-promulgated rules. It is, instead, accepting the rules for what they say and as far as they go and simply evaluating whether the resulting regulatory scheme is sufficient to replace the traditional predicate. This is a question concerning a procedural aspect of the rules of evidence. It is the courts' province, not the legislature's or executive's to decide such matters. *In re: Florida Evidence Code,* 372 So.2d 1369 (Fla. 1979). Under our constitution, the courts must neither delegate this duty nor allow this power to be usurped.

Second, the option the state suggests the defendants' should exercise to challenge the breath-testing scheme is unwieldy and time consuming. The state would have each defendant ask leave of the Court to delay his trial to allow him to file a petition under the APA and, after that, the district court of appeal, to have these issues resolved. Only after this procedure is exhausted would a defendant be entitled to return to the Court for the final resolution of his criminal case. On balance the methods employed by the defendants in this Court are more economical than the options suggested by the state.

Finally, even if this were a challenge to the validity of the rule, under the due process clause a defendant has the right during his criminal prosecution to challenge the validity of a statute or rule he is charged with violating. *See, e.g., State v Cumming,* 365 So.2d 153 (Fla. 1978). Such a rule challenge typically occurs in criminal cases when the defendant is alleged to have violated a rule which has been given the effect of a penal statute by the legislature. None of the parties in the present case has cited any authority in which a challenged rule concerns only the admissibility of evidence in a criminal trial. This Court sees no significant difference between the right to challenge a rule which is the basis of a criminal charge and a rule which allows the

state to produce a major piece of evidence against the defendant. Therefore, due process requires that these defendants be allowed to challenge the state's regulatory scheme for breath testing during their criminal prosecution. Having decided this Court should entertain the defendants' arguments, the question of whether the current regulatory scheme is a sufficient substitute for the traditional predicate is clearly presented.

The Court is of the opinion that the regulatory scheme is not sufficient to substitute for the traditional predicate. The rules fail to provide for yearly testing procedures and they provide no performance standards for either the yearly or monthly checks. The only sufficient accuracy checks contained in the rules are those relating to the prototype testing contained in rule 10D-42.022. This shortcoming, as a matter of law, renders the regulatory scheme insufficient to substitute for the traditional predicate, which requires proof of the reliability of the breath testing procedures and instruments. Therefore, the state cannot rely on the regulatory substitute predicate to introduce the breath test results. Likewise, the statutory presumptions under section 316.1934, Florida Statutes, are not available.

The Court agrees with the rationale of the Louisiana Supreme Court in *State v Rowell,* 517 So.2d 799 (La. 1988). In that case the defendant argued that the regulations for blood alcohol testing were insufficient to allow the state to use the statutory presumptions of intoxication. The court held the regulations were insufficient in that they did not specify the proficiency needed in order to issue a permit to persons who performed blood analysis for alcohol. The regulations also failed to provide for the repair, maintenance, or inspection of the machines. As a result the state had failed to meet its burden to show that the regulations ensured the reliability of blood alcohol analyses.

Although HRS's formally-promulgated rules do not themselves specify a procedure for the yearly checks or standards of performance for the yearly or monthly checks, there are established procedures and standards for the yearly and monthly checks actually used by personnel who conduct these checks. None of these are formally promulgated but, instead, are composed by HRS employees Dr. Howard Rarrick, Paul Tomlinson, and Dr. Charles Hartwig. These informally-adopted procedures and standards have statewide application and otherwise meet the definition of a "rule," as that term is used in section 120.52(16), Florida Statutes and *Department of Transp. v Blackhawk Quarry Co.,* 528 So.2d 447 (Fla. 5th DCA), *review denied,* 536 So.2d 243 (Fla. 1988) Yet none of them has been put through the rule-making procedures of the APA or otherwise been subjected to a public

**145**

hearing as required in section 316.1932(f)(1). Because they were not, this Court cannot consider them valid provisions of the regulatory scheme which purports to be a substitute for the traditional evidentiary predicate for the admissibility of breath test instruments. *Blackhawk Quarry Co.*

The defendants who refused the breath test argue that because of the infirmities of the regulatory scheme, the refusals cannot be introduced into evidence. They argue that under *State v Duke,* 378 So.2d 96 (Fla. 2d DCA 1979), and *Lowery v State,* 402 So.2d 1287 (Fla. 5th DCA 1981), a refusal to submit to the test is admissible only if the test itself is both compulsory and admissible. They agree that the breath test is compulsory, but they argue that the test is not admissible and, therefore, the refusal is not admissible. This argument must be rejected because this Court has not held that the breath tests are not admissible; it has ruled merely that one of the available means to establish the necessary predicate is not available to the state.

For the foregoing reasons, the Court grants the defendants' motion in limine in part and holds that the state may not rely on the HRS rules to supplant the traditional predicate for the introduction of breath test results. The state may introduce evidence of the defendants' refusals to take the breath test.

The Court certifies the following questions to be matters of great public importance.

1. Are the current HRS rules concerning breath testing sufficient to substitute for the traditional predicate for the admission of breath test results?

2. Is the county court in a prosecution for driving under the influence a proper forum within which this question may be decided?

DONE AND ORDERED in Chambers in Orlando, Orange County, Florida, this 14th day of January, 1991.