## STATE OF FLORIDA v NUMEROUS DEFENDANTS (The Individual names of Defendants were not provided on the Order for Publication and reference was made only to Case Numbers.)

Case No. 91-02069 (Consolidated)

County Court, Leon County

March 6, 1991

### APPEARANCES OF COUNSEL

**Robin Freeman,** for plaintiff.

**Edward Lee Meadows, Jr., Esquire** and **Sam Proctor, Esquire,** for defendants.

# OPINION OF THE COURT

TERRY P. LEWIS, County Judge.

### ORDER GRANTING IN PART DEFENDANTS' MOTION IN LIMINE

THIS CAUSE came to be heard upon Motions in Limine to bar results of chemical breath tests. Upon the evidence presented, the Court makes the following findings:

### THE FACTS

Each of these defendants, charged with D.U.I., submitted to a chemical breath test on a device known as the Intoximeter 3000, Serial Number 3707, Revision B-1 (hereafter Intoximeter 3000). A component part of the instrument, known as the Taguchi Sensor (or T-Cell), measures acetone and other hydrocarbons so as to distinguish these substances from ethanol alcohol.

On January 11, 1990, prior to the test administered to the Defendants in these cases, the Taguchi Sensor in this instrument was "bypassed" by representatives of the Tallahassee Police Department and the Department of Health and Rehabilitative Services.[1] The result of the bypass is that the instrument no longer measures or alerts the operator to the presence of acetone or other hydrocarbons.

### ISSUE

IS THE BYPASS OF THE TAGUCHI SENSOR SUCH A MODIFICATION OF THE INSTRUMENT SO THAT IT IS NO LONGER AN "APPROVED" INSTRUMENT UNDER FLORIDA STATUTES SECTION 316.1932(1)(b) AND SECTION 10D-42.022, F.A.C.

Florida law requires a person who wishes to operate a motor vehicle in this State to submit to an *approved* chemical test in order to determine the alcohol content of his blood if there are reasonable grounds to believe he was operating a motor vehicle while under the influence of alcoholic beverages. *Section 316.1932(1)(a), (Fla. Stat.).* The Department of H.R.S. was delegated the responsibility of approving instruments and testing techniques. Accordingly, Rule 10D-42.022 F.A.C. requires prior approval of H.R.S. before an instrument can be

---

[1] Apparently, the Taguchi Sensors had been burning out sooner than expected and the bypass was suggested by the manufacturer to eliminate the need to replace the Taguchi Sensors.

used in this State. Rule 10D-42.023 F.A.C. contains an accuracy checking requirement prior to registration. Rule 10D-42.024(4-13) F.A.C. is a list of the instruments approved under Rule 10D-42.022 F.A.C.

If the State can show substantial compliance with H.R.S. Rules the results of chemical breath tests may be admitted into evidence without the necessity of establishing a predicate of scientific reliability. *Section 316.1934(2), Fla. Stat.*; *State v Bender,* 382 So.2d 697 (Fla. 1980).

The Defendants argue that the bypass of the T-Cell in the Intoximeter 3000 changes the instrument so that it is not the same one "approved" by Rule, i.e., that it has been so modified that it must be re-certified. The Defendants rely on *State v Flood,* 523 So.2d 1180 (Fla. 5th DCA 1988). In *Flood,* in response to complaints that the T-Cell burned out quicker than it should, the manufacturer drilled a hole in the housing unit of the T-Cell and reversed the flow of air from a fan. The State and its witness maintained that the instrument, as modified, did not need to be re-certified by H.R.S., i.e., that it was still an "approved" instrument. The Court held that this was a modification of the instrument such that it must be re-certified.

The State in the present case argues that bypassing the Taguchi Sensor does not constitute a modification of the Intoximeter 3000. The State maintains that bypassing the Taguchi Sensor is, and has always been, an option available to the operator.

Dr. Howard Rarrick, scientific director of the Implied Consent Program for Florida, testified that there is no requirement in the State of Florida to identify acetone in a breath sample. He also described the procedure by which the T-Cell is bypassed as simple, easily accomplished by one knowledgeable of the instrument. He describes it as an option for the operator.

Dr. Rarrick acknowledged, however, that his department had never approved an Intoximeter 3000 device that did not have a functioning Taguchi Sensor cell, and that every test done for certification of the Intoximeter 3000 was done with a functioning T-Cell. He also acknowledged that 5 of 25 tests on the annual inspection and 3 of 6 tests on the monthly inspection of the devices as directed by H.R.S. are for the purpose of checking acetone.

Mr. Johnny Moss, sales and technical representative for the manufacturer of the Intoximeter 3000[2], also characterizes the bypassing of

---

[2] The Court overrules the Defense objection to the testimony of this witness as an expert.

the T-Cell as an option, rather than a change or modification of the instrument, noting that the states of Connecticut and Georgia presently operate an Intoximeter 3000 without a functioning T-Cell. His conclusion, however, appears to be based upon his observation that there is no physical change to the instrument. In other words, if you opened it up and looked at the inside of the device you could not tell if the Taguchi Cell Sensor was operating or not. Moreover, the Court was presented no evidence as to the standards employed in Georgia and Connecticut.

On the other hand, the Court has reviewed the patent for the Intoximeter 3000. The very first thing one reads in the patent, explaining the background of the invention, is the following:

The testing of a subject's breath to determine the amount of alcohol in the subject's blood, using an infrared detector that measures the absorption of infrared energy in the 3.3-3.48 micron energy region, it is a well established technique used by law enforcement and alcohol treatment centers. However, this method has a serious drawback in that the IR device cannot distinguish between ethyl alcohol and acetone. Significant amounts of acetone appears in the breath of persons on stringent diets and in the breath of diabetics who are in ketosis acidosis or diabetic coma. Courts have begun to take notice of this problem.

One of the objects of this invention is to provide apparatus and method for supplying a true measure of the alcohol content of breath containing a mixture of alcohol and acetone. The rest of the patent contains numerous descriptive passages of the interaction and interrelationship of the infrared detector and the semiconductor or Taguchi Cell. This includes the portion of the patent that discusses numerous variations that are possible with the apparatus and the method of the invention. The Court has been unable to find, within the patent, any anticipation by the inventor that the Taguchi Cell would be bypassed and the device still remain true to its intended purpose and objective.

The State has presented no written documentation from the inventor or the manufacturer, such as an operator's manual, instructional guides, sales literature, or warranty materials explaining how the T-Cell might be bypassed by the operator, or why that might be an "option" that an operator may wish to employ. The only evidence suggesting that a bypass is something contemplated and acceptable given the intent and design of the instrument, is the conclusory testimony of Mr. Moss and Dr. Rarrick, which the Court finds unconvincing.

92

As stated in *State v Bender, supra,* the purpose of the requirement of *approved* tests is to (1) "ensure reliable scientific evidence for use in future court proceedings," and (2) "protect the health of those persons being tested, who by this statute have given their implied consent to these tests." 382 So.2d at 699.

As to health concerns, testimony at the hearing demonstrated that a high reading of acetone could be indicative of a diabetic in serious medical trauma. Obviously, with the T-Cell bypassed, the instrument does not alert the operator to this.

As to reliability, although the presence of indigenous acetone in the driving public may be statistically insignificant, this may be of little comfort to the defendant with a .10% BAC reading and a high level of unregistered acetone. Moreover, there appears to be very little, if any, scientific study of the significance of inhaled exogenous hydrocarbons, as found in paints and solvents, on the scientific reliability of test results of instruments such as the Intoximeter 3000. It is the opinion of the Defendants' expert witness that, because of this factor, the instrument is scientifically unreliable.

It may very well be that the Intoximeter 3000, with a bypassed T-Cell produces scientifically reliable results. That remains to be seen. However, the questions raised in this regard by the evidence presented support the finding of a substantial modification of the device.

The State's reliance on *State v Allen,* Case Number 89-06112 is misplaced. The defendant in *Allen,* did not, as the defendant did in the present case, assert that the Intoximeter 3000 was not an "approved" instrument under H.R.S. Rules. There was no allegation or proof that H.R.S. rules had not been complied with. The Court denied the motion, finding that the test results were obtained in compliance with H.R.S. rules and regulations, and that questions of reliability go to the weight not the admissibility of the test results.

In the present case, given the stated purpose and objective of the instrument, and given the rationale for the H.R.S. rules, the Court concludes that the bypass of the T-Cell is a modification of the Intoximeter 3000 requiring re-certification or re-approval. Moreover, the "informal" approval of this modification by Dr. Rarrick is not enough. See *State v Potter,* 438 So.2d 1085 (Fla. 2d DCA 1983); *State v Hoff,* 16 F.L.W. C25 (Cir. Ct. Jan. 14, 1991); *Straughn v O'Riordan,* 338 So.2d 832 (Fla. 1976); *Dept. of Admin. v Stevens,* 344 So.2d 290 (Fla. 1st DCA 1977.

It is therefore

ORDERED AND ADJUDGED that the Defendants' Motions in

Limine are granted in part, in that the State may not rely on the H.R.S. rules to supplant the traditional predicate for the introduction of the breath test results. These cases shall be scheduled for docket sounding March 18, 1991.

DONE AND ORDERED this 6th day of March, 1991, at Tallahassee, Leon County, Florida.