954 So.2d 1242 (2007)
Richard BRUCH, Appellant,
v.
STATE of Florida, Appellee.
No. 4D05-1496.
District Court of Appeal of Florida, Fourth District.
April 25, 2007.
Rehearing Denied May 18, 2007.
*1243 Michael Salnick of the Law Offices of Salnick & Fuchs, P.A., West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, J.
Arriving at the scene of a fatal automobile accident, a police officer saw indications that the driver may have been under the influence of alcohol when the accident occurred. Also, inside the driver's vehicle was a cooler with four bottles of beer and an open bottle of bourbon whiskey. She retrieved a blood-alcohol testing kit from her patrol carplaced there barely a month earlierand proceeded to have it used to draw blood from the driver, which was later tested. The results showed an illegal blood alcohol level.[1] The driver was charged with DUI manslaughter and for causing injury. During pretrial discovery it became apparent that the kit was used by the officer 28 days after the expiration date placed on its label by its manufacturer. Driver was convicted and appeals.
The principal contention on appeal is that the test results for a kit used after the lapse of the expiration date on the label should be presumed unreliable. In the evidentiary hearing on defendant's motion to suppress the test results, the State adduced this evidence. Dr. Jesse Bidanset is a forensic toxicologist. He has specialized knowledge of blood alcohol testing procedures and is familiar with the kit used in this case. The blood test kit contains a glass evacuation tube into which the sample is drawn ("vacutainer"). The vacutainer holds a sealed vacuum. Each vacutainer also contains a preservative and an anticoagulant. The vacuum assures a specific volume of blood draw to mix with the *1244 specific amount of chemicals already placed therein.
Before the kit is used, it is possible for the vacutainer's interior vacuum to deteriorate, which could result in a smaller volume of blood being drawn. A normal sample volume is 9-10mm. Manufacturers of these kits place expiration dates on them as part of their warranties concerning the sufficiency of the vacuum to draw the correct amount of blood for a proper sample. The expiration date does not relate to the preservation of the blood sample or affect its integrity once drawn and closed.
In this case, the vacutainer used by the officer had a normal vacuum. A normal size blood sample was drawn. The anticoagulant worked as indicated, the sample revealing some clots. Also the blood-alcohol level test result matched the result of the breath-alcohol test.
Other witnesses testified. The technician who performed the analysis on the kit testified she noted the expiration date and the fact that it was used after the date of expiration. She would not recommend using kits after their expiration date. The technician who administered the test said that he too would prefer using kits before their expiration dates. Defendant adduced no evidence calling into question the reliability of the specific test result in this case. Based on this testimony, the trial judge denied the motion to suppress and permitted the blood-alcohol test results to be admitted as evidence.
Under Florida's Implied Consent Law, certain evidence of DUBAL creates a presumption that the driver was impaired. § 316.1934(2)(c), Fla. Stat. (2006) (results of any test administered in compliance with §§ 316.1932 and 316.1933 give rise to the presumption that driver was impaired). To give rise to the presumption of impairment, the tests must comply with regulations promulgated by the Florida Department of Law Enforcement. § 316.1933(2)(b), Fla. Stat. (2006). The blood-alcohol evidence admitted in this case complied with section 316.1933(2)(b).
The Supreme Court decisions on the admission of blood-alcohol test results in DUI prosecutions have evolved over the last decade. The backdrop for these evolving cases has been the holding in 1980 that the admission of any evidence of alcohol content generally must comport with essential due process. State v. Bender, 382 So.2d 697 (Fla.1980). Bender specified that under the common law, evidence of blood alcohol levels in a DUI prosecution will comply with due process when the evidence shows that (1) the testing procedure is reliable, (2) the test was performed by someone qualified to do so on equipment proper for that purpose, and (3) expert testimony explains the science behind the test and the outcome. 382 So.2d at 699. In Robertson v. State, 604 So.2d 783 (Fla.1992), the court held that the statutory presumption of impairment is not available when the State has not complied with section 316.1933(2)(b).
Then in State v. Miles, 775 So.2d 950 (Fla.2000), the court made clear that evidence complying only with the Bender common law holding does not permit the statutory presumption of impairment under the Implied Consent Law. The court said that the common law approach of Bender and the statutory presumption are mutually exclusive because the presumption is contingent on compliance with the statute. Miles, 775 So.2d at 956-57. In Cardenas v. State, 867 So.2d 384, 395 (Fla. 2004), the court held that improperly instructing the jury as to the presumption of impairment when the evidence of blood alcohol has been admitted only under the common law testand not under the statutedoes not constitute fundamental error and is subject to the harmless error *1245 analysis of Goodwin v. State, 751 So.2d 537 (Fla.1999), and State v. DiGuilio, 491 So.2d 1129 (Fla.1986).
These holdings yield the following result in this case. There is no challenge to the blood alcohol evidence as not being in compliance with the FDLE regulations. The FDLE regulations do not specify compliance with any expiration date on the kit employed. The failure of the FDLE regulation to require that the test kits be used before any expiration date is not a violation of due process where, as here, the evidence supports the scientific reliability of this test done with an expired date. The use of a test from a kit with an expired date is not per se error. Hence the general jury verdict on both the impairment alternative and the DUBAL alternative is not reversible because the jury was instructed on the presumption of impairment. Both DUI alternatives were supported by proper evidence.
Affirmed.
SHAHOOD and MAY, JJ., concur.
NOTES
[1] See § 316.193(1)(a) and (b), Fla. Stat. (2006) ("A person is guilty of the offense of driving under the influence . . . if the person is driving . . . a vehicle within this state and (a) the person is under the influence of alcoholic beverages . . . when affected to the extent that the person's normal faculties are impaired; [or] (b) the person has a blood-alcohol level of 0.08 or more grams of alcohol per 100 milliliters of blood . . ."). In this case, the test results showed a blood alcohol level of 0.15 grams. Defendant was prosecuted both for driving while impaired by alcohol and, alternatively, for driving with an unlawful blood alcohol level (DUBAL). The verdict form is general; the jury was not asked to differentiate between impairment and DUBAL.