837 So.2d 478 (2002)
Zeferino Ortiz RODRIGUEZ, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-26.
District Court of Appeal of Florida, Fifth District.
December 27, 2002.
Rehearing Denied February 12, 2003.
*479 James B. Gibson, Public Defender, and Susan A. Fagan, Assistant Public Defender, Daytona Beach, for Appellant.
Richard E. Doran, Attorney General, Tallahassee, and Ann M. Phillips, Assistant Attorney General, Daytona Beach, for Appellee.
COBB, J.
The Appellant, Rodriguez, caused a two-car accident in which one person was killed and several others were injured. The van Rodriguez was driving contained two beer bottles between the driver and passenger seats. One of the beer bottles was open and the bottles were cold to the touch. Another cold beer bottle was on the ground near the van. Rodriguez had a strong odor of alcohol.
A state trooper, Gikas, investigated at the scene and spoke with witnesses Tom *480 and Donna Luffman.[1] In addition, Gikas reported Rodriguez had noticeably bloodshot eyes. Based on his investigation, Trooper Gikas believed that there was a reasonable basis for him to conclude that Rodriguez was under the influence to the extent that his normal faculties were impaired. As such, a blood draw was ordered. See § 316.1933(1), Fla. Stat. (2000).
Trooper Kline testified that when he arrived at the accident scene he observed a twist-off cap to a Bud Light beer bottle on the driver's side floor board and another twist-off cap to a Bud Light beer bottle up on the dashboard of Rodriguez's van. The accident was caused, according to Kline, by Rodriguez failing to yield the right of way when he turned left across the intersection. His van impacted with a truck, which was traveling 55-65 miles per hour. Kline also entered Rodriguez's hospital room while Rodriguez was asleep and detected the odor of alcohol coming from Rodriguez's breath. Finally, Kline testified that Rodriguez, after being released from the hospital, acknowledged to him that he drank 5 beers and that he could not see the truck. During Kline's testimony, the following exchange took place:
State: And, if you would, tell the jury exactly what the transaction was between the two of you; what did he say and what were your responses.
Kline: When I stopped at the red light, waiting to make the left turn, he looks over at me, and says, "Why am I being arrested?" And basically I told him the reason he was being arrested was because he was at-fault in a traffic crash, somebody had died as a result of it, and his blood alcohol level was over twice the legal limit. And with that he said he only had 5 beers. And I told him I don't know how much he had, but his BAC, his blood alcohol level, was over twice the limit, the legal limit.
Rodriguez was charged, inter alia, with DUI manslaughter. He filed two pretrial motions to suppress any and all evidence seized during a search of his person or the van he was driving, including observations as to his appearance while in custody and any physical evidence such as blood samples. The first motion asserted that the "odor of alcohol," by itself, was insufficient to establish probable cause for a blood draw. The second motion asserted that Rodriguez, as a Mexican national, was not advised of his right to engage the assistance of consular officials nor was the Mexican Consulate notified at any point in time of his arrest and detention. This motion was based on the authority of Article 36, Vienna Convention on Consular Relations, April 24,1963, TIAS 6820, 21 U.S.T. 77. Rodriguez argued he was denied his rights under international law and deprived of the advice and assistance of officials of the Mexican Consulate.
The motions to suppress were denied, the case proceeded to jury trial, and Rodriguez was convicted of DUI manslaughter, 2 counts of DUI with injury, and one count of DUI with property damage. He raises three issues on appeal.
The first issue concerns the correctness of the pretrial denials of the suppression motions. This issue is without merit. Probable cause for a blood draw pursuant to section 316.1933, clearly was established by the information available to Trooper Gikas. His conclusion that Rodriguez's *481 normal faculties were impaired at the time of the accident was supported by much more than merely the odor of alcohol, e.g., the beer bottles, the redness of eyes, the incoherence of Rodriguez, and the nature of the accident itself. See State v. Brown, 725 So.2d 441 (Fla. 5th DCA 1999). As to the second motion to suppress, it is clear that treaties are between countries, and individual citizens have no standing to challenge violations of such treaties in the absence of the protest of the sovereign involved. See Maharaj v. State, 778 So.2d 944 (Fla.2000); see also Matta-Ballesteros v. Henman, 896 F.2d 255 (11th Cir.1990).
The second issue concerns the denial of two mistrial motions by the defense. The first was occasioned by the testimony of Trooper Kline that he had explained that the reason for the latter's arrest was that his blood alcohol level was over twice the legal limit. This was not prejudicial because the fact of the blood alcohol level was later admitted into evidence at trial, and, indeed, it was more than twice the legal limit. The second mistrial motion dealt with the prosecutor's comment in closing argument that the parents of Keith Sullivan, who was killed in the accident, were now without a son. Given that this fact was already known to the jury, the prosecutor's reference to it could not have vitiated the fairness of the entire trial. See State v. Murray, 443 So.2d 955 (Fla.1984).
The third issue is Rodriguez's claim that the trial court committed fundamental error by instructing the jury as to the statutory presumptions under section 316.1934(2), Florida Statutes. Rodriguez relies on State v. Miles, 775 So.2d 950 (Fla.2000), Bonine v. State, 811 So.2d 863 (Fla. 5th DCA 2002), and Servis v. State, 802 So.2d 359 (Fla. 5th DCA 2001).
The State succinctly and correctly responds that the trial court in this case did not read the statutory presumptions regarding impairment to the jury. Rather, the jury was told that a blood alcohol level of .08 or higher could be an element of the crime. As pointed out in Robertson v. State, 604 So.2d 783, 792 (Fla.1992), this instruction was derived from the statutory elements of DUI manslaughter, not from the statute creating an implied consent presumption of impairment.
Moreover, the cases relied upon by the appellantMiles, Bonine and Servis were not fundamental error cases, which also distinguishes them from the instant case. Even had the erroneous presumption instruction been given, there is case authority supporting the proposition that this would not constitute fundamental error. See, e.g., Leveritt v. State, 817 So.2d 891, 897 (Fla. 1st DCA 2002); Cardenas v. State, 816 So.2d 724, 726 (Fla. 1st DCA 2002).
AFFIRMED.
ROUSE, JR., R. K., Associate Judge, concurs.
SHARP, W., J., concurs in result.
NOTES
[1] Rodriguez's vehicle, according to the Luffmans, was traveling on U.S. 441 and, as it approached an intersection, turned abruptly into the median and proceeded to hit a truck in front of the Luffmans. Mr. Luffman reported the odor of alcohol coming from Rodriguez's van and Rodriguez seemed incoherent as he slumped over the steering wheel.