867 So.2d 384 (2004)
Ronald R. CARDENAS, Jr., Petitioner,
v.
STATE of Florida, Respondent.
State of Florida, Petitioner,
v.
Howard Russell Bonine, Respondent.
Nos. SC02-1264, SC02-927.
Supreme Court of Florida.
February 26, 2004.
*386 Ronald R. Cardenas, Jr., pro se, DeFuniak Springs, FL, for Petitioner.
Charles J. Crist, Jr., Attorney General, James W. Rogers, Tallahassee Bureau Chief, Criminal Appeals, and Robert L. Martin, Assistant Attorney General, Tallahassee, FL, for Respondent.
Charles J. Crist, Jr., Attorney General, and Rebecca Roark Wall, Assistant Attorney General, Daytona Beach, FL, for Petitioner.
James B. Gibson, Public Defender, and Rosemarie Farrell, Assistant Public Defender, Seventh Judicial Circuit, Daytona Beach, FL, for Respondent.
PARIENTE, J.
These cases, which we have consolidated for purposes of this opinion, present two related questions concerning a standard jury instruction in prosecutions for driving or boating under the influence of alcohol. The questions are, first, whether giving the standard jury instruction on the presumption of impairment contrary to our *387 decision in State v. Miles, 775 So.2d 950 (Fla.2000), is fundamental error and second, if preserved, whether the error in giving the instruction is harmful per se or instead subject to a harmless error analysis.
In Miles, we held that the jury should not be instructed on the presumption of impairment when the State introduces blood-alcohol evidence that it obtained without complying with the quality assurance requirements of the implied consent law. See id. at 956-57. The standard jury instruction on the presumption of impairment, which was given in both cases under review, provides that a blood-alcohol level of .08 percent "is sufficient by itself" to establish that the driver was impaired.
In Cardenas v. State, 816 So.2d 724 (Fla. 1st DCA 2002), the First District Court of Appeal concluded that giving the standard instruction on the presumption of impairment contrary to Miles is not fundamental error that can be raised initially on appeal, and certified the following question of great public importance:
IS IT FUNDAMENTAL ERROR TO GIVE A JURY INSTRUCTION ON THE PRESUMPTION OF IMPAIRMENT IN VIOLATION OF THE PRECEPTS OF STATE V. MILES, 775 So.2d 950 (Fla.2000)?
Cardenas, 816 So.2d at 726.[1]
In Bonine v. State, 811 So.2d 863, 866 (Fla. 5th DCA 2002), the Fifth District Court of Appeal concluded that instructing the jury on the presumption of impairment in violation of Miles is harmful error per se. The Fifth District certified conflict with McBride v. State, 816 So.2d 656 (Fla. 2d DCA 2002), notice to invoke discretionary jurisdiction filed, No. SC02-619 (Fla. Mar. 18, 2002), in which the Second District concluded that giving the improper instruction was harmless error. See Bonine, 811 So.2d at 867.[2] We have jurisdiction in both cases. See art. V, § 3(b)(4), Fla. Const.
For the reasons that follow, we approve Cardenas, quash Bonine, and disapprove McBride to the extent that it holds that the error is harmless solely because of overwhelming evidence of actual impairment.

I. FACTS AND PROCEDURAL HISTORY

A. Cardenas

Cardenas was charged with two counts of boating under the influence (BUI) manslaughter and one count of BUI causing serious bodily injury, among other offenses. On the BUI counts, the State alleged that Cardenas was operating the boat either while he was impaired or while he had a blood- or breath-alcohol level of 0.08 percent or higher. At trial, the State *388 introduced evidence that Cardenas had been drinking before the fatal collision and had a blood-alcohol level of 0.0999 percent. Cardenas's theory of defense was that another person was operating the boat at the time of the accident.
The trial court gave the standard jury instruction that provided two alternative methods in which to prove the crimes charged: that the State had to prove beyond a reasonable doubt that at the time of the fatal accident, Cardenas "was under the influence of alcoholic beverages to the extent that his normal faculties were impaired or had a blood alcohol level of .08 or higher." The court instructed the jury that "[n]ormal faculties include but are not limited to the ability to see, hear, walk, talk, judge distances, drive an automobile, make judgments, act in emergencies, and in general, to normally perform the many mental and physical acts of our daily lives." The court also gave the standard jury instruction on the presumptions of impairment contained in the implied consent law.[3] The jury, utilizing a general verdict form, found Cardenas guilty as charged.[4]
On appeal, Cardenas asserted that the trial court committed reversible error under Miles by giving the standard jury instruction on the presumption of impairment after the State failed to comply with the requirements of the implied consent law in obtaining the blood-alcohol evidence relied upon for the presumption. The First District affirmed Cardenas's convictions, concluding that the issue was not preserved for appeal. The court also concluded that the instruction did not constitute fundamental error, but certified the question as having great public importance. See Cardenas, 816 So.2d at 727.

B. Bonine

Bonine was charged with driving under the influence (DUI) manslaughter and leaving the scene of a fatal accident after the vehicle he was driving struck and killed a motorcyclist. On the DUI manslaughter count, the State alleged in the alternative that Bonine was impaired by alcohol or a controlled substance, or had a blood-alcohol level of 0.08 percent or higher. In a dissenting opinion, Judge Harris summarized the evidence supporting both impairment and unlawful blood-alcohol level:

*389 A witness observed the defendant's vehicle "weaving in front of him" to such an extent that the witness dropped back, only to observe the defendant's vehicle further up the road stopped by the side of the highway about a quarter of a mile beyond the accident scene where it had run into a concrete sign/bench. The witness saw a motorcycle on the ground and the body of the victim lying in the ditch. The motorcycle had been rear-ended. The witness then observed appellant staggering back toward the scene of the accident and heard him admit that he had hit the motorcyclist but thought it was a deer. An officer described the defendant as "smelling of alcohol" and as having slurred speech. Further, defendant admitted to having consumed beer on the day in question and his blood-alcohol level was .226.
Bonine, 811 So.2d at 869 (Harris, J., dissenting). The theories of defense were reasonable doubt that Bonine was impaired and unreliability of the blood-alcohol evidence.
As in Cardenas, the trial court instructed the jury that the crime of DUI could be established either by actual impairment or by having a blood-alcohol level of .08 or higher. The court also instructed the jury on the presumption of impairment. Utilizing a general verdict form, the jury found Bonine guilty as charged, and Bonine appealed the conviction. The Fifth District, sitting en banc, determined that giving the instruction despite the State's failure to comply with the requirements of the implied consent law constituted error under Miles, and held that the error was harmful per se. See Bonine, 811 So.2d at 866.

II. DUI AND THE PRESUMPTION OF IMPAIRMENT
The statute criminalizing DUI currently provides that a defendant can be charged and convicted under three alternative theories:
(1) A person is guilty of the offense of driving under the influence and is subject to punishment as provided in subsection (2) if the person is driving or in actual physical control of a vehicle within this state and:
(a) The person is under the influence of alcoholic beverages, any chemical substance set forth in s. 877.111, or any substance controlled under chapter 893, when affected to the extent that the person's normal faculties are impaired;
(b) The person has a blood-alcohol level of 0.08 or more grams of alcohol per 100 milliliters of blood; or
(c) The person has a breath-alcohol level of .08 or more grams of alcohol per 210 liters of breath.
§ 316.193(1), Fla. Stat. (2003). Section 327.35, Florida Statutes, (1995), the BUI statute under which Cardenas was convicted, is identical to the DUI statute in regard to the alternative elements of impairment and unlawful blood-or breath-alcohol level.[5] Thus, subsection (1)(a) requires proof of impairment, while the strict liability approach of subsections (1)(b) and (1)(c) requires proof of driving with an unlawful *390 blood-or breath-alcohol level, otherwise known as DUBAL.[6]
The blood-alcohol evidence that proves DUBAL may be admitted under either the common law governing scientific test results or the implied consent law. Under the common law, a scientific test result on intoxication is admissible "if a proper predicate established that (1) the test was reliable, (2) the test was performed by a qualified operator with the proper equipment and (3) expert testimony was presented concerning the meaning of the test." State v. Bender, 382 So.2d 697, 699 (Fla.1980).
Admission of blood-alcohol evidence under the common law predicate does not trigger any presumption regarding impairment. The State may rely on the presumption of impairment only if the additional requirements of the implied consent law for quality assurance of the blood sample are met. See Robertson v. State, 604 So.2d 783, 792 (Fla.1992).[7] Following Robertson, we held in Miles that the administrative rule governing blood collection and testing procedures under the implied consent law was invalid because it did not adequately provide for the preservation of blood-alcohol evidence. We further held in Miles that noncompliance with these strict quality assurance requirements precludes the State from relying on the presumption of impairment. See 775 So.2d at 953-57. Because the implied consent provisions are identical in all material respects for DUI and BUI, Miles, which involved DUI, applies in BUI cases as well. See Cameron v. State, 804 So.2d 338, 342 (Fla. 4th DCA 2001) ("It is true that Miles and Robertson arose under the motor vehicle statutes and not the boating statutes, but the two statutory schemes are identical and the result under the latter should be no different than the result under [the] former."). The State does not contend otherwise.
In certifying the question in Cardenas, the First District calls upon this Court to determine whether improperly instructing the jury on the presumption of impairment, contrary to Miles, is fundamental error, which can be raised for the first time on appeal. The certified conflict in Bonine relates to properly preserved error and requires us to determine whether an erroneous instruction on the presumption of impairment can be subjected to a harmless error analysis or, instead, is harmful per se.

III. ANALYSIS

A. Fundamental Error
This Court recently reiterated longstanding principles concerning preservation of instructional error:
Instructions ... are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred. To justify not imposing the contemporaneous objection rule, the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error. In other words, fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict. *391 Reed v. State, 837 So.2d 366, 370 (Fla.2002) (quoting State v. Delva, 575 So.2d 643, 644-45 (Fla.1991)) (citations and quotation marks omitted) (emphasis supplied). Applying this test in Reed, we concluded that the trial court committed fundamental error in giving a standard instruction that incorrectly defined malice, an essential element of the offense of aggravated child abuse, when that element was disputed at trial. See id. at 369.
We first address whether giving a presumption of impairment instruction in violation of Miles reaches into the validity of the trial itself such that a guilty verdict "could not have been obtained without the assistance of" the error. Id. at 370 (quoting Delva, 575 So.2d at 644). We conclude that, because of the unique nature of the DUI statutory scheme, the improper instruction does not meet this test of fundamental error.
As we have explained, there are alternative methods of proving DUIimpairment or DUBAL. The presumption of impairment instruction assists the State in proving only one of these alternatives, impairment. As we explained in Robertson, the revision to the DUI statute that made impairment and DUBAL alternative methods of proving the same offense, rather than separate offenses, created a redundancy in the statute, "since impairment is presumed if the blood-alcohol content is 0.10 or higher." 604 So.2d at 792 n. 14.[8] As noted by the Second District, the DUBAL instruction "is available to the State regardless of the presumption instruction." Tyner v. State, 805 So.2d 862, 867 (Fla. 2d DCA 2001).
We recognized in Robertson that the availability of the DUBAL alternative makes the presumption of impairment "a moot concern if the state proves beyond a reasonable doubt that the defendant operated a motor vehicle with an unlawful blood-alcohol level." 604 So.2d at 792 n. 14. Nonetheless, as the cases under review demonstrate, juries have continued to be instructed on the presumption of impairment as an alternative to DUBAL in both DUI and BUI cases.
When the jury is instructed on DUBAL after the State has introduced blood-alcohol evidence under the three-prong test of Bender, as occurred in each of these cases, the jury may find the defendant guilty based on the same evidence that supports the presumption of impairment without considering whether the defendant was under the influence of alcohol to the extent that his or her normal faculties were impaired. As we observed in State v. Rolle, 560 So.2d 1154, 1156 (Fla. 1990), in which we upheld the presumption of impairment instruction against a constitutional challenge,
[t]o the extent the challenged instruction allowed the jury to substitute proof of a blood-alcohol level of 0.10 percent or higher for proof of impairment it correctly stated the law. Essentially, section 316.193 allows proof of a blood-alcohol level of 0.10 percent or higher to be substituted for proof of impairment not as an unconstitutional presumption, but as an alternate element of the offense.
Id. at 1156. This statement applies equally to the current .08 percent threshold for DUBAL and the presumption of impairment. In his dissenting opinion in Bonine, Judge Harris also explained that the presumption *392 is unnecessary when the jury is instructed on DUBAL:
In order to receive the presumption instruction the State must first prove the alternative theory for conviction, unlawful blood alcohol level. If the State proves this theory, then proving impairment is surplusage and the presumption instruction is redundant. On the other hand, if the State fails to prove an unlawful blood alcohol level, then the presumption, even if the instruction is given, does not come into play.
811 So.2d at 868 n. 2 (Harris, J., dissenting).
An instruction on a DUI theory that is surplusage, or whose redundancy makes it a "moot concern" as we stated in Robertson, 604 So.2d at 792 n. 4, cannot be "pertinent or material to what the jury must consider in order to convict." See Reed, 837 So.2d at 370 (emphasis supplied). Accordingly, it is not fundamental error to instruct the jury on the presumption of impairment when a jury finds the defendant guilty of DUI after being instructed on DUBAL.
We next consider whether erroneously instructing the jury on the presumption of impairment can be considered fundamental error if the jury is also instructed on actual impairment but not DUBAL. We answer this question in the negative because the presumption neither omits nor incorrectly defines the element of impairment. As noted by the First District in Cardenas,
[a]n improper instruction or failure to instruct as to an essential element of a crime may rise to the level of fundamental error. The instruction in the instant case, however, neither omitted from the definition of an offense one of the essential elements, nor misdefined one of the essential elements of an offense. The challenged instruction merely advised the jury of an evidentiary presumption or permissible inference that they were free to accept or reject.
. . . .
The use of the standard impairment presumption instruction here did not constitute fundamental error because it did not affect the fairness of the proceeding. There is no assertion that the blood samples taken from appellant on the night of the accident were tainted in any way. We fail to see how the giving of the standard impairment presumption instruction under these circumstances influenced the outcome of the trial or that the guilty verdict could not have been obtained without the improper instruction.
816 So.2d at 727 (citations omitted). The First District analogized the improper instruction on the statutory presumption to erroneous instructions on affirmative defenses. The court observed that in Holiday v. State, 753 So.2d 1264, 1269-70 (Fla. 2000), and Smith v. State, 521 So.2d 106, 108 (Fla.1988), this Court held that instructions improperly shifting the burden of proof on the affirmative defenses of entrapment and insanity did not violate due process, and thus were not fundamental error. See Cardenas, 816 So.2d at 727. The First District in Cardenas also cited to Rolle, in which we determined that the implied consent law created a permissive inference, not an unconstitutional presumption, on only one of the two theories supporting conviction. See id. (citing to Rolle, 560 So.2d at 1156). The Second District, relying on Cardenas, has also held that "it is not fundamental error to give the instruction." Daigle v. State, 848 So.2d 1233, 1234 (Fla. 2d DCA 2003).
We agree with the conclusion of the First District that the improper instruction on the presumption of impairment neither *393 omitted nor misdefined an essential element of the crime. Cf. Sochor v. State, 619 So.2d 285, 290 (Fla.1993) (finding that failure to give instruction on voluntary intoxication did not constitute fundamental error because voluntary intoxication was a defense to, but not an essential element of, the charged crime). This situation is different from cases such as Reed, in which the trial court incorrectly defined malice, an essential element of the crime of aggravated child abuse. See 837 So.2d at 370.
Therefore, we conclude that the improper instruction does not constitute fundamental error when the jury is instructed on either DUBAL or actual impairment, or both. Accordingly, we answer in the negative the First District's certified question in Cardenas as to whether instructing on the presumption in violation of Miles is fundamental error.

B. Harmless Error
We next address the certified conflict between the Fifth District decision in Bonine and the Second District decision in McBride on harmless error. The Fifth District held in Bonine that the instruction on the presumption of impairment is per se harmful, while the Second District in McBride conducted a harmless error analysis.[9] Many of the same considerations that guided our determination that the improper instruction is not fundamental error lead us also to conclude that the improper instruction on the presumption of impairment is not harmful per se when the defendant is charged with DUBAL and the jury is correctly instructed thereon. In Bonine, the Fifth District did not address the effect of the DUBAL allegation and instruction in holding that the improper instruction on the presumption of impairment was harmful error per se. Instead, the Fifth District analogized the erroneous instruction on the presumption of impairment to cases in which reversal was compelled because the appellate court could not discern the effect of a legal error in instructing on one of two theories supporting a general guilty verdict. See Bonine, 811 So.2d at 866-67.[10] Taking a contrary *394 view in McBride, the Second District found the erroneous instruction to be harmless "due to the overwhelming evidence of McBride's impairment presented by the State," without discussing whether the State charged and the trial court instructed on DUBAL. 816 So.2d at 658.
We conclude that the "general verdict" precedent relied on by the Fifth District in Bonine to hold that the erroneous instruction constitutes per se harmful error does not apply to the DUI statutory scheme. In Yates v. United States, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), overruled on other grounds, Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), the Supreme Court held that a conviction under a general verdict is improper when it rests on multiple bases, one of which is legally inadequate. Accordingly, the Court reversed a conviction of conspiracy based on a general verdict where one of the possible grounds for conviction was legally inadequate because of a statutory time bar. See Yates, 354 U.S. at 311-12, 77 S.Ct. 1064. In Griffin v. United States, 502 U.S. 46, 112 S.Ct. 466, 116 L.Ed.2d 371 (1991), the Court distinguished Yates from situations in which the evidence on one theory is merely factually insufficient, explaining that when "jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error." Griffin, 502 U.S. at 59, 112 S.Ct. 466. However, when the evidence is factually insufficient to support conviction on one of the two theories, "jurors are well equipped to analyze the evidence" and reject that theory. Id. Applying these principles, the Court held in Griffin that the Due Process Clause of the Fifth Amendment does not require that a general guilty verdict on a multiple-object conspiracy charge be set aside if the evidence is inadequate to support conviction as to only one object of the conspiracy. See id. at 60.
In accord with Griffin, this Court has held that legally insufficient evidence on one of two theories supporting a general verdict does not warrant reversal, even with proper objection at trial:
While a general guilty verdict must be set aside where the conviction may have rested on an unconstitutional ground or a legally inadequate theory, reversal is not warranted where the general verdict could have rested upon a theory of liability without adequate evidentiary support when there was an alternative theory of guilt for which the evidence was sufficient.
San Martin v. State, 717 So.2d 462, 470 (Fla.1998) (footnotes omitted) (emphasis supplied); see also Mungin v. State, 689 So.2d 1026, 1029 (Fla.1995). In both San Martin and Mungin, this Court affirmed first-degree murder convictions based on felony murder although the evidence was legally insufficient to prove the alternative theory of premeditated murder, concluding in each case that the error was "clearly harmless." San Martin, 717 So.2d at 469; Mungin, 689 So.2d at 1029.
The distinction between legally inadequate and factually insufficient theories of guilt recognized in these cases turns on the discrete nature of each theory. The reasoning is that where the theories are independent, a reviewing court cannot determine whether a jury relied on the evidence supporting a theory on which it was erroneously instructed through a mistake in the law, rather than the evidence supporting the valid theory. This distinction does not apply in the cases under review because when the jury is instructed on both DUBAL and the presumption of impairment, the alternative methods for proving DUI through blood test results rely on the same evidentiary factthe existence *395 of a .08 blood-alcohol level. A blood-alcohol level of .08 or higher both establishes DUBAL and assists the State in proving impairment. To either conclude that a defendant is guilty under the DUBAL alternative or apply the presumption of impairment, the jurors must first find beyond a reasonable doubt that the defendant operated a motor vehicle with a .08 blood-alcohol level. This fact independently establishes DUI via DUBAL under section 316.193(1)(b) without regard to the alternative of impairment under section 316.193(1)(a). Thus, jurors instructed on both DUBAL and the presumption of impairment are capable of determining that when the State has established a .08 percent blood-alcohol level beyond a reasonable doubt, the presumption of impairment is, as the Court stated in Robertson, a "moot concern." 604 So.2d at 792 n. 14.
Relying on our statement in Robertson, the Fourth District has held that the improper instruction on the presumption of impairment is harmless error when the State proves DUBAL "beyond a reasonable doubt." State v. Cameron, 837 So.2d 1111, 1113 (Fla. 4th DCA 2003); cf. Rolle, 560 So.2d at 1157 (Barkett, J., specially concurring) ("As long as the jury was properly instructed on the DUBAL theory, any error in the other theory was, in effect, harmless."). Moreover, as Judge Harris recognized in Bonine, if the proof of unlawful blood alcohol level falls short, the instruction on the presumption of impairment "does not come into play" and is harmless. 811 So.2d at 868 n. 2 (Harris, J., dissenting).
As to the proper harmless error analysis when the jury is not instructed on DUBAL, we disagree with the view of Judge Harris in Bonine, 811 So.2d at 870, and the holding of the Second District in McBride, 816 So.2d at 656, that overwhelming evidence of impairment alone can render the error in instructing on the presumption of impairment harmless. As noted by the Fifth District in the majority opinion in Bonine, we have emphasized that the test of harmless error
is not a sufficiency-of-the-evidence, a correct result, a not clearly wrong, a substantial evidence, a more probable than not, a clear and convincing, or even an overwhelming evidence test. Harmless error is not a device for the appellate court to substitute itself for the trier-of-fact by simply weighing the evidence. The focus is on the effect of the error on the trier-of-fact. The question is whether there is a reasonable possibility that the error affected the verdict. The burden to show the error was harmless must remain on the state. If the appellate court cannot say beyond a reasonable doubt that the error did not affect the verdict, then the error is by definition harmful.
811 So.2d at 866 (quoting State v. DiGuilio, 491 So.2d 1129, 1139 (Fla.1986)). Relying on the same passage from DiGuilio, this Court held that an unconstitutional predecessor to the instruction on the presumption of impairment given in these cases was not harmless beyond a reasonable doubt even though there was other evidence of actual impairment. See Wilhelm v. State, 568 So.2d 1, 3 (Fla.1990).
Where the evidence of actual impairment is strong, as it was in both Bonine and McBride,[11] the jury may nonetheless *396 choose to rely in part or whole on the presumption of impairment instruction that a blood alcohol level of .08 percent "is sufficient by itself to establish that the defendant was under the influence of alcohol to the extent that his normal faculties were impaired." We therefore disapprove McBride to the extent that it departs from the DiGuilio test for harmless error.[12]See also Williams v. State, 863 So.2d 1189 (Fla.2003) (quashing district court decision that incorrectly applied DiGuilio test); Knowles v. State, 848 So.2d 1055, 1059 (Fla.2003) (same).

IV. THE INSTANT CASES
Based on these conclusions, we address the decisions below in Cardenas and Bonine. There is no indication in these cases either that the State failed to carry its burden of laying the common law predicate for blood-alcohol evidence or that the evidence was improperly admitted. Thus, the State properly introduced evidence that Cardenas' blood-alcohol level was .0999 percent and Bonine's blood-alcohol level was .226 percent.
In both Cardenas and Bonine, the juries rendered general verdicts of guilt after being properly instructed on the alternative theories of DUBAL and actual impairment. Accordingly, in Cardenas the improper instruction on the presumption of impairment was not fundamental error both because the blood alcohol evidence was properly admitted, thereby providing a factually sufficient basis to prove DUBAL, and because there was evidence to establish actual impairment.
The Fifth District concluded in Bonine that the error under Miles in giving the instruction was harmful per se without first addressing whether the issue was preserved for appeal. See Bonine, 811 So.2d at 866.[13] Our independent review *397 of the record reveals that Bonine did not object to the instruction, and therefore failed to preserve the issue for appeal. Accordingly, the Fifth District erred in reversing Bonine's conviction on an issue that was neither preserved nor fundamental error. See Reed, 837 So.2d at 370 (absent an objection at trial, challenges to jury instructions can be raised on appeal only if fundamental error occurred). For this reason and because the court in Bonine also incorrectly held that the error was harmful per se, contrary to our decision today, we quash the Fifth District's decision.

V. CONCLUSION
In conclusion, we hold that an improper instruction on the statutory presumption of impairment, given contrary to the holding in Miles, is not fundamental error if the State charges DUBAL and the jury is correctly instructed thereon, or if the jury is correctly instructed on actual impairment. As to improper instructions that are preserved by a timely objection, we hold that error under Miles is harmless under a general verdict when the State charges and the jury is also correctly instructed on DUBAL. However, if no DUBAL instruction is given and the jury must rely on impairment as the sole theory of guilt of DUI, then any preserved error in giving an improper instruction on the statutory presumption of impairment should be assessed under the harmless error test of DiGuilio. Based on these conclusions, we approve the First District decision in Cardenas and answer the question certified therein in the negative. In Bonine, we quash the Fifth District decision and remand for affirmance of Bonine's conviction of DUI manslaughter. We disapprove McBride to the extent it is inconsistent with this opinion.[14]
It is so ordered.
ANSTEAD, C.J., and LEWIS, CANTERO, and BELL, JJ., concur.
WELLS, J., concurs in part and dissents in part with an opinion, in which QUINCE, J., concurs.
WELLS, J., concurring in part and dissenting in part.
I concur with the majority's decision in approving the First District's decision in Cardenas v. State, 816 So.2d 724 (Fla. 1st DCA 2002), and in quashing the Fifth District's decision in Bonine v. State, 811 So.2d 863 (Fla. 5th DCA 2002). I do not join in the majority opinion in respect to harmless error, which I conclude is dicta. I dissent from the majority's partial disapproval of the Second District's decision in McBride v. State, 816 So.2d 656 (Fla. 2d DCA 2002).
The reason that the majority's discussion of the harmless error is dicta in Bonine is plain in that the majority opinion acknowledges, at page 24, that there was no objection to the instruction. In light of there being no objection, as this Court pointed out in Reed v. State, 837 So.2d 366, 369-70 (Fla.2002), the proper analysis is whether the error is fundamentalnot whether the error is harmless. Bonine conflicts with Cardenas but not with McBride.
Thus, this Court does not have jurisdiction to disapprove a part of McBride. But even if there was jurisdiction, I would not agree with the partial disapproval of the McBride decision because the majority gives the Second District's opinion too *398 cramped a reading and unnecessarily and inappropriately corrects the Second District. The majority ignores that the Second District's opinion specially states:
Error is harmless only "if it can be said beyond a reasonable doubt that the verdict could not have been affected by error." State v. DiGuilio, 491 So.2d 1129, 1135 (Fla.1986).
McBride v. State, 816 So.2d at 657. I do not join in disapproving the district court for its use of a word which the majority simply decides it will not use.
I do agree with the Second District's decision that any error in respect to the instruction was harmless.
QUINCE, J., concurs.
NOTES
[1] The Second District Court of Appeal certified the same question in Daigle v. State, 848 So.2d 1233, 1234 (Fla. 2d DCA 2003), notice to invoke discretionary review filed, No. SC03-1284 (Fla. July 21, 2003). The First District also certified a similar question in Leveritt v. State, 817 So.2d 891, 897-98 (Fla. 1st DCA 2002), notice to invoke discretionary jurisdiction filed, No. SC02-1369 (Fla. June 18, 2002). We have stayed the proceedings in Daigle and Leveritt pending our decision in Cardenas.
[2] The Second District subsequently certified conflict with Bonine on the harmless error issue in Searles v. State, 816 So.2d 793, 795 (Fla. 2d DCA 2002), notice to invoke discretionary jurisdiction filed, No. SC02-1254 (Fla. June 3, 2002). We have stayed the proceedings in Searles pending our decision in Bonine. McBride v. State, No. SC02-619 (Fla. notice filed March 18, 2002), is also pending review in this Court based on an alleged express and direct conflict with Bonine and three other Fifth District decisions. The proceedings in McBride have also been stayed.
[3] The standard instructions on the presumptions arising from blood- or breath-alcohol test results provide:

1. If you find from the evidence that the defendant had a blood or breath alcohol level of 0.05 or less, you shall presume that the defendant was not under the influence of alcoholic beverages to the extent that [his][her] normal faculties were impaired.
2. If you find from the evidence that the defendant had a blood or breath alcohol level in excess of 0.05 but less than 0.08, you may consider that evidence with other competent evidence in determining whether the defendant was under the influence of alcoholic beverages to the extent that [his][her] normal faculties were impaired; or
3. If you find from the evidence that the defendant had a blood or breath alcohol level of 0.08 or more, that evidence would be sufficient by itself to establish that the defendant was under the influence of alcohol to the extent that [his][her] normal faculties were impaired. However, such evidence may be contradicted or rebutted by other evidence.
These presumptions may be considered along with any other evidence presented in deciding whether the defendant was under the influence of alcoholic beverages to the extent that [his][her] normal faculties were impaired.
Fla. Std. Jury Instr. (Crim.) 7.8, 28.1, 28.3.
[4] A general verdict is one in which the jury determines guilt or innocence without making explicit findings. See Sullivan v. Louisiana, 508 U.S. 275, 283, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993).
[5] At the time of Cardenas's convictions, sections 316.193 and 327.35 each contained a single subsection that addressed both unlawful blood-and breath-alcohol content. Specifically, sections 316.193(1)(b) and 327.35(1)(b), Florida Statutes (1995), provided that a person was guilty of driving and boating under the influence if the person "had a blood or breath alcohol level of .08 percent" or above. In a 1996 amendment, the Legislature separated into different subsections the levels of blood-and breath-alcohol content that constitute the crimes. See ch. 96-330, Laws of Fla., eff. Oct. 1, 1996.
[6] The alternative DUBAL theory of driving with an unlawful breath-alcohol level, currently contained in subsection (1)(c), is not involved in these cases.
[7] When Robertson was decided, the threshold for DUBAL was a blood-alcohol level of .10 percent. The Legislature subsequently reduced the threshold for both DUBAL and the presumption of impairment to .08 percent. See ch. 93-124, § 1-2, 4, Laws of Fla.
[8] DUI and DUBAL were originally separate offenses with separate penalties. In 1982, the Legislature amended the DUI statute to make impairment and unlawful blood-alcohol level, which had been separate offenses with separate penalties, into alternative theories of guilt of a single offense. See State v. Rolle, 560 So.2d 1154, 1155 (Fla.1990).
[9] We disagree with Justice Wells' assertion in his separate opinion that there is no reason to address the harmless error issue in Bonine. The interdistrict conflict on this issue, which was certified by the Fifth District and also appears on the face of the opinion in Bonine, should be reconciled. See art. V, § 3(b)(3)-(4), Fla. Const.; Fla. Patient's Compensation Fund v. St. Paul Fire & Marine Ins. Co., 559 So.2d 195 (Fla.1990) (concluding that conflict on the face of the opinions "must be harmonized"). This conflict is between Bonine and McBride rather than Bonine and Cardenas, as suggested by Justice Wells, because the Fifth District opinion in Bonine does not reveal whether the error in that case was preserved for appeal. The same conflict over harmless error was subsequently certified by the Second District in Searles, 816 So.2d at 795, in which we have stayed proceedings before merits briefing pending resolution of Bonine. In certifying conflict with Bonine, the Second District in Searles also cited several other decisions in which the Fifth District concluded that the error in giving the presumption of impairment instruction could not be harmless. See Servis v. State, 802 So.2d 359, 360 (Fla. 5th DCA 2001) (refusing to find error harmless because there was no way to determine the theory upon which the jury relied in reaching its verdict); Bass v. State, 801 So.2d 975, 975-76 (Fla. 5th DCA 2001) (refusing to find error harmless even given "other evidence presented of Bass's impairment" because "we cannot conclude that use of presumption did not likely contribute to the verdict"); Hembree v. State, 790 So.2d 590, 591 (Fla. 5th DCA 2001) (finding error "clearly prejudicial" and "clearly preserved"). In short, this is an issue certain to recur. In fact, if we do not address harmless error in Bonine, which has been fully briefed, we will have to order briefing and address the issue in Searles, a case that has been stayed pending our disposition of these cases.
[10] The Fifth District has reversed other DUI convictions based on the same reasoning. See Servis, 802 So.2d at 359-60; Bass, 801 So.2d at 976; Hembree, 790 So.2d at 591.
[11] The Second District relied on the following facts in finding the error harmless in McBride:

At trial, the State presented evidence from several witnesses that McBride drove at approximately 70 miles per hour in a 35 miles per hour zone, swerved in and out of lanes, had trouble maintaining a lane, nearly rear-ended a minivan, barely missed hitting a bicyclist, and swerved into oncoming traffic, where he hit the victim's car head on. Additionally, testimony showed that McBride's tires were screeching as he wove through traffic and that he cut so closely in front of other cars that the drivers were forced to slam on their brakes in order to avoid being hit by McBride's vehicle. Furthermore, two of the paramedics that responded to the scene testified that while in the ambulance with McBride, they smelled alcohol on his breath, and a police officer testified that McBride said he had been drinking all day.
816 So.2d at 657.
[12] In addition to the strength of the evidence of impairment, other relevant considerations in a determination of harmlessness include the exact language used in instructing the jury on the presumption, the margin by which the blood-alcohol test result exceeded the .08 percent threshold, and the degree to which the defense challenged the reliability of the test results or rebutted the presumption with evidence showing lack of impairment. As we stated in Bender,

[t]he presumptions are rebuttable, and a defendant may in any proceeding attack the reliability of the testing procedures, the qualifications of the operator, and the standards establishing the zones of intoxicant levels. In addition, other competent evidence may be presented to rebut the presumptions concerning whether the person was under the influence of alcoholic beverages to the extent that his or her normal faculties were impaired.
382 So.2d at 699. With these considerations stated, we leave the determination of whether an improper instruction on the presumption of impairment is harmless error in the absence of a DUBAL instruction to the district courts of appeal and to the circuit courts acting in their appellate capacity in reviewing misdemeanor DUI convictions.
[13] In a subsequent case, the Fifth District asserted that Bonine was "not [a] fundamental error case[ ]," suggesting that the error in Bonine was preserved for appeal. See Rodriguez v. State, 837 So.2d 478, 481 (Fla. 5th DCA 2002), review denied, No. SC03-475, 868 So.2d 524 (Fla. Jan. 23, 2004). The Fifth District in Rodriguez further stated in dicta that an improper instruction on the presumption of impairment would not be fundamental error, citing to the First District decisions in Cardenas and Leveritt. See id.
[14] We decline to address the additional issues raised by the parties that are beyond the scope of the certified question. See Wheaton v. State, 789 So.2d 975, 975 n. 2 (Fla.2001); McMullen v. State, 714 So.2d 368, 373 (Fla. 1998).