# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D17-4094

_____

TIMOTHY CLARENCE MILLER,

    Appellant,

    v.

STATE OF FLORIDA,

    Appellee.

_____

On appeal from the Circuit Court for Duval County.
Steven B. Whittington, Judge.

August 16, 2018

JAY, J.

    In this direct criminal appeal from a judgment and sentence for robbery with a firearm, Appellant argues that the trial court committed fundamental error when it failed to instruct the jury that a BB gun is not a firearm. Appellant also claims that if we disagree with his first argument, we should find that defense counsel's failure to request the special instruction constituted ineffective assistance of counsel that was evident on the face of the appellate record. We decline to make the latter finding and do so without further comment. Also, for the reasons that follow, we conclude Appellant has failed to demonstrate fundamental error.

## I.

On July 28, 2016, a surveillance camera captured stark images of Appellant robbing a clerk at gunpoint at a Dollar Tree Store in Jacksonville. In a post-arrest taped interview that was played for the jury—when Appellant was faced with the indisputable still photographs of him committing the robbery—Appellant's first concern was "what kind of time" he would get for his actions. He then claimed that he had not planned to kill the clerk because he was only armed with a BB gun. When the detective asked Appellant to tell him where he had dumped the gun—because it would "add to the credibility of [his] story . . . it not being a real gun"—he equivocated. And, when asked to describe the BB gun—whether it was a big one or a little one—Appellant informed the detective that "it has a .44 [caliber] bullet." In response to the detective's next question of whether it was "semiautomatic or a revolver," Appellant responded, "Revolver."

After studying the still photographs pulled from the surveillance film, the detective commented, "So right now that as far as I'm concerned it was a big ass gun, okay? You're telling me it was a BB gun. Tell me where I can find the gun that looks just like that . . . ." Appellant gave the detective three different locations as to where he had concealed the gun. The gun was never recovered. The detective testified that after looking at the picture of the gun and analyzing Appellant's actions and statements, he had "all the reason to believe that it was a firearm." He further explained it was his understanding that the opening where the projectile comes out of a BB gun is "much smaller than a .44."

The store clerk testified as to how "cold" and "hard" the barrel of the gun felt when Appellant placed it against the back of her neck, under her hair. She heard the sound it made when Appellant placed it on the counter in order to empty the cash register—it was a heavy metal sound, like "when you drop something in the trash can that's metal." It was not plastic. She stated she had shot a handgun on prior occasions and the weapon Appellant possessed did not appear to her to be a BB gun because the opening of the gun's barrel was not small, as it is on a BB gun. When asked if it appeared to be a real gun, the clerk answered, "Yes, sir."

2

The jury also heard a taped phone call from the jail between Appellant and his mother. During their conversation, Appellant's mother asked him if he "did it." Appellant said, "Yeah." Then she asked him if he had used a gun, Appellant said, "Yeah. Yeah."

In his closing arguments to the jury, defense counsel advanced the following points:

> There is nothing in this case to show that it was a firearm. . . .
>
> . . . .
>
> And by definition what a firearm is is any weapon including a starter gun which will, is defined to or may readily be converted to expel a projectile by the action of an explosive, the frame or receiver of such weapon, any firearm muffler or firearm silencer, any destructive device, any machine gun. *Key word explosive.* There is nothing here that shows that – even what that weapon was, item or whatever you want to call what it was – had the capability of being an explosive weapon. . . . There was nothing to show that that gun had explosive capabilities.
>
> There's nothing in that item to show that it was even a deadly weapon. Was it a BB gun? I don't know. But according to Mr. Miller . . . [h]e said it was a BB gun . . . .

(Emphasis added.)

With defense counsel's express consent, the trial court instructed the jury on the definition of "firearm" from section 790.001(6), Florida Statutes, as set out verbatim in Florida Standard Jury Instruction (Crim.) 15.1:

> A firearm means any weapon including a starter gun which will, is designed to or may readily be converted to expel a projectile *by the action of an explosive*, the frame or receiver of any such weapon, any firearm muffler or firearm silencer, any destructive device, any machine gun.

3

(Emphasis added.) In that same instruction, the trial court advised the jury on the definition of a "deadly weapon" and a "weapon," and further, if the jury found Appellant was in possession of neither a deadly weapon nor a weapon, but did commit the robbery, it was free to find Appellant "guilty only of robbery."

Well into its deliberations, the jury submitted the following question to the trial court: "Does a BB gun classify as a firearm because it expels a projectile?" When the court read the question to the parties, defense counsel immediately responded by asserting that the "[d]efinition is in the jury instruction . . . ." After further discussion, the prosecutor pointed out that "there is a case that specifically cites that a BB gun is not a firearm." The trial judge retorted, "Well, I know that the BB gun is not a firearm. We all know that." Then he added, "There's been no testimony about that, no evidence about that. I don't know that I'm comfortable telling them that." A brief, unreported sidebar took place following the State's suggestion that they craft a special instruction.

Once back on the record, the judge announced:

> I have made a decision, I think both the state and the defense agree, that I'm simply going to bring the jury back in and tell them that they've heard all the evidence in the case and they've heard the definition specifically as to firearm and weapon, so I'll refer them back. I'm not going to re-read it to them.

When asked, neither side had any objection to the judge's decision. The jury was called into the courtroom and the trial judge instructed them as follows:

> You probably wish I could give you a better answer than this but this is what I am required to do and limited to do. All the evidence that you've heard in this case has been presented. There's no other evidence that I can offer to you or explain to you and the definitions specifically as it relates to that question as to what a firearm is those are – that's the law in Florida that defines what a firearm is, so I'll defer [sic] you back to those pages in the jury instructions that you have back there that define again firearm, deadly weapon and weapon.

4

Less than thirty minutes later, the jury returned a verdict finding Appellant guilty of robbery as charged in the information. It also specifically found that during the commission of the robbery, Appellant carried a firearm and that Appellant "did actually possess" the firearm. The trial court adjudicated Appellant guilty in accordance with the jury's verdict and sentenced him to a term of thirty years' imprisonment with a ten-year minimum mandatory sentence based on his possession of the firearm. This appeal followed.

## II.

In *Cardenas v. State*, 867 So. 2d 384 (Fla. 2004), the Florida Supreme Court applied the fundamental error analysis to jury instructions:

> Instructions . . . are subject to the contemporaneous objection rule, and, absent an objection at trial, can be raised on appeal only if fundamental error occurred. To justify not imposing the contemporaneous objection rule, *the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.* In other words, fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict.

*Id.* at 390 (emphasis added); *see also Stewart v. State*, 420 So. 2d 862, 863 (Fla. 1982).

Here, consistent with the evidence, the jury received the standard instructions related to the charge of robbery with a firearm. Nothing essential to the charged offense was omitted. When presented with the question of whether a BB gun is "a firearm because it expels a projectile[,]" the trial court referred the jury back to the instructions, which defined the terms firearm, deadly weapon, and weapon. There was no objection to the court's response. The trial court was well within its discretion in the manner it responded to the jury's question. *See Green v. State*, 907 So. 2d 489, 497 (Fla. 2005) ("A trial court does have discretion in answering or refusing to answer a jury's question."); *Perriman v.*

*State*, 731 So. 2d 1243, 1247 (Fla. 1999) ("[T]he trial court did not abuse its discretion in declining to give an additional instruction.").

Moreover, the State presented competent, substantial evidence on the nature of the weapon used by Appellant during the robbery, including the pictures of the gun from the surveillance photographs, the store clerk's testimony as to the characteristics of the weapon pressed to her neck, the detective's testimony that what he saw in the photographs was a firearm, and Appellant's affirmative response to his mother's question asking if he had carried a gun. The taped interview of Appellant's protestations that he had only carried a BB gun could readily have been interpreted by the jury as self-serving, given his initial interest as to "what kind of time" he would get for the crime. Further, his declaration to the detective that he had carried only a BB gun came much later in the interview, when the detective emphasized the undeniable evidence that Appellant was the robber.

For his part, defense counsel forcefully cross-examined the detective in order to inject doubt as to whether the weapon was in fact a firearm or, as Appellant had claimed, merely a BB gun. And, in closing arguments, he was careful to distinguish for the jury the differences between a BB gun and a firearm based on the former's inability to expel a projectile by an "explosive" action. Consequently, it was logical for defense counsel to propose answering the jury's "projectile" question with the statutory definition of a firearm.

Appellant relies for support on case law holding that a BB gun is not a "firearm," as that term is defined in section 790.001(6). *See J.M.P. v. State*, 43 So. 3d 189 (Fla. 4th DCA 2010); *Petz v. State*, 917 So. 2d 381 (Fla. 2d DCA 2005); *Mitchell v. State*, 698 So. 2d 555 (Fla. 2d DCA 1997). However, in all three of those cases, the weapon had been recovered and was identified as a BB gun. In the present case, whether Appellant's weapon was in fact a BB gun was in dispute, since no weapon was ever found. As pointed out by Appellee, there was circumstantial evidence from which the jurors could have determined that it was not a BB gun—had they believed the testimony of the store clerk and the detective; or, that it was a BB gun—had they accepted as true Appellant's statements to the detective that it was only a BB gun.

That the jury wrestled with this evidence is readily apparent from another question it posed to the trial court, that question being whether there was "any more discussion about [the] gun or BB gun on the collect [jail] call." That question—and the one at the forefront of this appeal—raised factual issues concerning the ultimate question of fact the jurors were being asked to decide: whether the weight of the evidence was sufficient to prove Appellant was in possession of a firearm. This is not a case where the trial court refused to give a requested instruction on a category one lesser-included offense or gave a standard instruction that had been invalidated by the Supreme Court, as in *State v. Montgomery*, 39 So. 3d 252 (Fla. 2010), or where the trial court gave instructions that were fundamentally defective for omitting an essential element of the crime charged, as was the case in *Mercer v. State*, 656 So. 2d 555, 556 (Fla. 1st DCA 1995). Rather, the trial court properly instructed the jury on the necessary legal definitions. No fault can be found on that score.

III.

We conclude that the trial court did not err—much less commit fundamental error—when, in answer to the jury's question, it referred the jury back "to those pages in the jury instructions" that defined a firearm, a deadly weapon, and a weapon. *See Cannon v. State*, 180 So. 3d 1023, 1036 (Fla. 2015) ("Generally, the feasibility and scope of any reinstruction of the jury 'resides within the discretion of the [trial] judge.'") (citation omitted). That response was perfectly consistent with the evidence. Appellant, therefore, has not demonstrated fundamental error within the meaning of *Cardenas*. Accordingly, Appellant's judgment of conviction and sentence are affirmed.

AFFIRMED.

MAKAR and OSTERHAUS, JJ., concur.

———————————————

*Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.*

———————————————

Andy Thomas, Public Defender, and David A. Henson, Assistant Public Defender, Tallahassee, for Appellant.

Pamela Jo Bondi, Attorney General, and Benjamin L. Hoffman and Samuel B. Steinberg, Assistant Attorneys General, Tallahassee, for Appellee.